J^Chief Judge WILLIAM H. BYRNES III.
On August 29, 2000, Michael Q. Spencer was charged by bill of information with armed robbery in violation of La. R.S. 14:64. At his arraignment on September 5th he pleaded not guilty. The trial court found .probable cause and denied the motion to suppress the evidence at a hearing on September 20th. After trial on October 25th a twelve-person jury found the defendant to be guilty as charged. He was sentenced on January 3, 2001, to serve thirteen years at hard labor without benefit of parole, probation, or suspension of sentence. His motion for reconsideration of sentence was denied, and his motion for an appeal was granted.
At trial Anthony R. Armour testified that after work on May 19, 2000, he and a friend went to a neighborhood bar, the Moon Lounge (also called the Club Twenty-eight and Private) [1] at about 11:30 p.m., and ordered drinks. They were about to leave when they decided to get another drink, and they stood at one end of the bar to order. After the barmaid walked to the other end of the bar, Mr. Armour looked up at her and realized a robbery was in progress. A man with a pistol standing next to the cash register was “sticking money in his pocket.” Mr. Armour *813 12stated that he thought the gun was in the man’s right hand. Mr. Armour and his friend tried to leave but another gunman at the door would not allow it. As Mr. Armour began backing up toward the bar, he was shot. The bullet entered his arm, glanced his lung and exited at his hip. Mr. Armour showed the jury his scars. Mr. Armour could not identify either robber.
Officer James Clarkston testified that he was dispatched to a bar at 6729 Old Gentilly Road where he found people standing outside, and that a man had been shot inside the bar. The officer spoke with the injured man and tried to interview the people outside, but no one wanted to get involved.
Ms. Terez Smith, a technician for the crime lab, testified she was called to the scene of the shooting on Old Gentilly Road where she lifted three partial latent fingerprints from the outside of a metal drawer; however, none of the prints was suitable for identification. She also collected a spent Winchester ,9mm Luger casing.
Detective Danny Wharton testified that on the night of the robbery he interviewed Heather Farve who was working behind the bar during the robbery. The detective had tried unsuccessfully to get in touch with her during the first week of July in order to show her a photographic lineup. On July 7th he was off duty and sitting outside a daiquiri shop on Crowder Boulevard just before midnight when he saw her approaching the shop. He asked her to walk to his ear to view the lineup. They stood outside his car, and the detective handed her the photos and she selected the picture of the defendant and named him as the man who robbed the bar at gunpoint.
Ms. Heather Farve testified that she got to work about 4 p.m. on May 19th and she normally works until the bar closes. About midnight just after she had 1¡¡taken an order from Anthony Armour, the defendant walked to the bar and ordered a drink. He was not wearing dark glasses at the time, and she knew he had been in the bar for more- than an hour. She told him she could not wait on him because she was working the floor. As she turned toward the cash register, the defendant came behind the bar and pointed a silver and black gun at her. She said he was wearing blue jeans, a green T-shirt, and a leather cap, as well as dark glasses. He told her to put the money from the register in a garbage bag. When she did not move quickly, he began stuffing the money in the bag himself. He was holding the gun in his left hand and the taking the money from the register with his right hand. He asked her what was in the file drawer, and when she told him money was kept there, he opened that drawer and took the moneybag. She estimated he took five hundred dollars. He demanded her jewelry. When she could not get her earrings off fast enough, he grabbed the chain she was wearing. She said the robbery took five to ten minutes. Ms. Farve did not initially realize that someone was shot during the robbery. She heard the gunshot but she thought the customers were fighting. Under cross-examination, Ms. Farve was asked about the lighting in the bar. She explained that behind the bar there is hght so that the people working can see what they are doing, and on the patron side of the bar the lights are not as bright, but everything can be seen. She also admitted that after the incident she had described the defendant as six feet, one inch tall, weighing two hundred a nd fifteen pounds, and being between the ages of thirty-two and thirty-six. When Ms Farve was asked how she recognized the defendant in the photo lineup given the fact that he had on dark glasses and a hat *814 during the robbery, she answered she knew him by his nose and lower face.
LMichael Spencer, the twenty-three year old defendant, testified that he lives at 4452 Francis Drive with his father and two brothers. On the night of May 19th and morning of May 20th he was at home with his family. He is five feet ten and one-half inches tall and weighs one hundred and fifty pounds. He denied being at the Club Twenty-eight and Private or Moon’s Lounge on the night in question or anytime at all. He said he was not familiar with the location on Old Gentilly Road even though he lives only one mile away. He works at a temporary job service but he was not working on May 19th because it was his father’s birthday and he was at home getting ready for a party. When asked to write his name with his right hand and then with his left hand, the defendant did so, and the results indicated that he was right-handed.
In a single assignment' of error, the defendant argues that the evidence is insufficient to support the conviction.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact |sfinder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
In addition, when identity is disputed, the State must negate any reasonable probability of misidentification in order to *815 satisfy its burden under Jackson v. Virginia. State v. Edwards, 97-1797, pp. 12-13 (La.7/2/99), 750 So.2d 893, 902; State v. Woodfork, 99-0859, pp. 4-5 (La.App. 4 Cir. 5/17/00), 764 So.2d 132, 134, writ denied, 2000-1748 (La.7/28/00), 766 So.2d 1263.
Defendant was convicted of armed robbery, a violation of La. R.S. 14:64. The State had to prove beyond a reasonable doubt that defendant took something of value belonging to another from the person of another or that was in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon.
RThe defendant complains that Ms. Farve is an unreliable witness because she testified to facts that are contradictory and inconsistent. The defendant correctly notes that there is no physical evidence to connect him to the robbery and only Ms. Farve’s testimony supports the conviction.
Ms. Farve saw the defendant in the bar prior to the robbery when he was not wearing dark glasses, and then during the robbery she was with him behind the bar for several minutes while he emptied the cash register and cash drawer and took her jewelry. She testified that there was enough light behind the bar for her to operate the cash register, and thus there was enough light for her to see a person standing very near to her. She was able to describe his gun as black and silver.
When confronted with the disparity between the height, weight, and age descriptions she gave the police the night of the crime and the actual height, weight, and age of the defendant, she explained that she was very upset after the robbery. The defendant maintains that her identification of him is unreliable based on her statement that she selected his picture by looking at his nose. However, she said she focused on his face in the picture from his nose down, i.e., his mouth and chin as well as his nose. Moreover, she had seen him without the hat and glasses prior to the robbery.
The question of whether the gun was held in the assailant’s right or left hand while he was taking money from the cash register is not dispositive. The assailant was in a situation where he needed two right hands. In order to grab as many bills as possible he could have held the gun in the left hand.
Moreover, the defendant testified in his own behalf and denied being in the bar that night. The jury heard the testimony and rejected his version of the facts. 17Furthermore, the jury was aware of the contradictions and inconsistencies the defendant complains of and yet believed the testimony of Ms. Farve.[2]
If credible, the testimony of a single witness may establish the elements of a crime beyond a reasonable doubt. See State v. Hills, 99-1750, p. 8 (La.5/26/00), 761 So.2d 516, 522, footnote 8; State v. Allen, 94-1895, p. 7 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084. Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime of armed robbery present beyond a reasonable doubt, and also found beyond a reasonable doubt that the State negated any reasonable probability of misidentification.
This assignment of error is without merit.
*816 Accordingly, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Also called the Club Twenty-eight and Pri-vale.

. The defense filed a motion for a post verdict judgment of acquittal based on exactly the same arguments made in this appeal. At that hearing the trial court denied the motion and commented that the testimony of Ms Favre was credible while the defendant’s version of the facts was not believable.