LANDRIEU, Judge Pro Tempore.
|-,The defendant, Darryl Jackson, was charged by a bill of indictment with malfeasance in office, a violation of La. R.S. 14:134. He pled not guilty. Following a judge trial, Mr. Jackson was found guilty as charged. After denying the motions for a new trial and for acquittal, the trial court sentenced Mr. Jackson to serve eighteen months at hard labor.[1] The trial court suspended the sentence, placed Mr. Jackson on active probation for a period of eighteen months, and imposed various fines and fees. Later, in response to a letter written by Mr. Jackson’s probation officer, the trial court amended the sentence to reflect that Mr. Jackson was placed on inactive probation for eighteen months. Mr. Jackson timely appealed.
STATEMENT OF FACTS
Franz Zibilich, an assistant city attorney, testified that Mr. Jackson was an assistant city attorney employed by the City of New Orleans at the time the malfeasance occurred; Mr. Zibilich identified Mr. Jackson’s personal payroll records. During the time that Mr. Jackson committed his crime, Mr. Zibilich was a Chief Deputy City Attorney assigned to supervise federal litigation and the traffic |2and municipal courts. He stated that Mr. Jackson was an assistant city attorney assigned to Section D of the traffic court.[2]
Mr. Zibilich testified that the city attorney, Mavis Early, had informed him that cases involving Jamal Joseph and Katrice Matthews were nolle prosequied in December of 2001. The charges nolle prosequied on Mr. Joseph’s behalf included a DWI and other traffic offenses.[3] After a preliminary investigation, Mr. Zi-bilich forwarded the matter to the Office of Municipal Investigation.[4] The matter was subsequently turned over to the police department and district attorney’s office.
When asked to describe the policies of the City Attorney’s Office, Mr. Zibilich testified that the duty of an assistant city attorney assigned to the traffic court is to prosecute on behalf of the city all traffic violations. He stated further that a DWI was not ordinarily nolle prosequied without permission or acknowledgment by a supervisor and that it was not normal protocol to dismiss a DWI prior to arraignment. Mr. Zibilich testified that the City Attorney’s Office has a policy that prevents an assistant city attorney from co-representing a defendant and the city. He also denied giving permission to nolle pro-sequi the case against Mr. Joseph.
Jamal Joseph testified that he and his cousin had just left a wedding reception when he was involved in an accident with another vehicle. After a breathalyzer was *853 administered by police, he was arrested, and he remained in jail for two weeks before he was brought to the traffic court.[5] There he met with Mr. |s Jackson, who informed him that he was the attorney hired by his mother and that Mr. Joseph was going home.
Mr. Joseph testified that he has not since been arraigned or prosecuted on the DWI, and this testimony was confirmed by Sharon Calcagno, an employee of New Orleans Traffic Court. She testified that the charges were nolle prosequied on December 3, 2001, the day Mr. Joseph was scheduled to be arraigned.
Mr. Joseph admitted that he was reluctant to testify until he was granted immunity by the state. He testified further that the state never informed him that he could be federally prosecuted for bribery of a public official. Mr. Joseph also admitted a prior conviction for simple burglary.
Mr. Joseph’s mother, Stephanie Batiste, testified that after learning of her son’s arrest, she contacted her church to see whether it could recommend an attorney. The church’s secretary suggested Mr. Jackson and gave her his phone number.
When Ms. Batiste called Mr. Jackson, he did not answer, and she left a message. He returned her call, and Ms. Batiste informed him that her son was in jail on a DWI arrest. Mr. Jackson told her that he would handle her son’s case for $1500.00. When Ms. Batiste informed him that she could only afford $500.00, he said he would get back to her. Mr. Jackson subsequently called Ms. Batiste and accepted the fee of $500.00. He informed her that it would have to be paid in cash so that the payment could not be traced. After their conversation, Ms. Batiste withdrew the balance of her savings account, $472.98, from the Whitney National Bank. Mr. Jackson came to her house to collect the fee, and she never saw him again.
|4On cross-examination, Ms. Batiste admitted that she was granted immunity by the state to testify. She stated that she was not informed that she could be federally prosecuted.
ERRORS PATENT
The record contains no errors patent.
ASSIGNMENT OF ERROR NUMBER
By his sole assignment of error, Mr. Jackson asserts that the evidence was insufficient to support the conviction.
In State v. Spencer, 2001-1066 (La.App. 4 Cir. 11/14/01), 802 So.2d 811, this Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence *854 most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but | ¿rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Spencer, 2001-1066 at pp. 4-5, 802 So.2d at 814-15, quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99,106-07.
La. R.S. 14:134, provides in pertinent part:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner.
Here, the state presented evidence showing that Mr. Jackson was a public employee working as an assistant city attorney for the City of New Orleans at the time of the alleged crime. The evidence also shows that Mr. Jackson had a duty to prosecute on behalf of the city all traffic violations including the legitimate DWI charge against Jamal Joseph, and as an assistant city attorney, he was prohibited from co-representing a defendant and the city. Instead of performing his duties, testimony shows that Mr. Jackson accepted a payment of $500.00, which he insisted be paid in cash, to dismiss the DWI and other traffic violations charged against Mr. Joseph.
Despite the evidence presented, Mr. Jackson urges that the testimony by Jamal Joseph and his mother, Stephanie Batiste, was unbelievable because they were granted immunity by the state. He argues further that Ms. Batiste’s testimony that she paid him $500.00 is unbelievable because only a bank transaction in the ¡ (¡amount of $472.98 was shown.[6] However, this court has repeatedly held that a fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. Here, the trial court apparently found the witnesses credible despite the grant of immunity. Also, simply because the balance of Ms. Batiste’s savings account that she withdrew in its entirety was roughly $27.00 shy *855 of the $500.00 necessary to pay appellant for his services does not render her testimony less credible. In sum, the evidence supported the verdict, and this assignment of error is without merit.
DECREE
Accordingly, for the foregoing reasons, Mr. Jackson’s conviction and sentence are affirmed.
AFFIRMED.

. The transcript of sentencing shows that appellant said he was ready for sentencing after the motions were denied.

. Mr. Zibilich described himself as a supervisor's supervisor. In the case of the traffic court, a deputy city attorney would supervise the assistant city attorneys assigned to the court. Mr. Zibilich supervised the deputy city attorney.

. The charges, if any, against Ms. Matthews were not revealed; though subpoenaed, she did not appear at trial. She is Mr. Joseph's cousin.

. Katrice Matthews had filed the initial complaint with the Office of Municipal Investigation.

. Officer Stokes administered a breathalyzer to Mr. Joseph at the scene of the accident, and he tested over the legal limit for intoxication at .119.

. Bank statements admitted into evidence show that she withdrew the balance of her saving account on November 27, 2001.