TERRI F. LOVE, Judge.
_JjThe state filed a bill of information charging the defendant/appellant, Paul Forbs, with bank fraud. He entered a not guilty plea. After being delayed as a result of Hurricane Katrina, a motion hearing was held, where the district court found probable cause and denied the mo *955 tion to suppress the evidence. Following a jury trial, the appellant was found guilty as charged. He was sentenced to serve five years at hard labor. The appellant later pled guilty to a multiple bill of information charging him as a third felony offender. After vacating the previous sentence imposed, the district court resentenced him under La. R.S. 15:529.1 to serve six years and eight months at hard labor. The appellant moved for an appeal, and the motion was granted. We find that the evidence was sufficient to support the appellant’s conviction for bank fraud and therefore affirm the appellant’s conviction and sentence.
PROCEDURAL HISTORY
The state filed a bill of information charging appellant with bank fraud. He entered a not guilty plea. A hearing on motions scheduled for August 29, 2005, did not occur because of the hurricane. After the hurricane, the hearing on motions was delayed further because appellant was not immediately transferred back to |20rleans Parish. A hearing on motions was held in September 2006, and the district court found probable cause and denied the motion to suppress the evidence. Following a jury trial, the appellant was found guilty as charged. He was sentenced to serve five years at hard labor. The appellant pled guilty to the multiple bill of information charging him as a third felony offender. After vacating the previous sentence imposed, the district court resentenced him under La. R.S. 15:529.1 to serve six years and eight months at hard labor. The appellant’s motion for appeal was granted.
FACTUAL BACKGROUND
The appellant entered a branch of the Whitney National Bank on April 26, 2005 at approximately 10:15 a.m. He presented a check to teller Cherryl Duskin (“Ms. Duskin”) that was drawn on Harrison Jones’ (“Mr. Jones”) account in the amount of $200.00. Ms. Duskin became suspicious of the check because appellant informed her that he had been owed the money for some time, the check bore the date of April 26th, and the funds to cover the check were deposited long before the appellant presented with the check, and noted that the account had a “beautiful” balance.
Ms. Duskin asked appellant for identification, and he hesitated. The appellant asked Ms. Duskin why she needed to see his identification, and she informed him that it was to verify the information on the check. He then complied.
Ms. Duskin checked the signature on file for Mr. Jones, the owner of the account, and it did not match the signature on the check. She called Mr. Jones to ask whether he knew the appellant and whether he had written the check, and he said no. Mr. Jones indicated that he had given a woman a ride home from a bar the night before and that some of his checks may have been stolen from the center | console of his vehicle. He then told Ms. Duskin to contact the police. Mr. Jones testified similarly as to what he and Ms. Duskin discussed.
Based on the information she received from Mr. Jones, Ms. Duskin approached the bank manager, Terry Marquez. Ms. Duskin was advised to inform the police officer on duty. When the officer and Ms. Duskin turned to approach the appellant, they noticed that he had left the bank, leaving behind his identification and the check.
At trial, the appellant testified that the check he presented to the bank was given to him by a woman named Shawn Connerly (“Ms. Connerly”). He had done some fence work for Ms. Connerly. Ms. Con- *956 nerly approached the appellant while he was working on a fence in St. Bernard Parish and asked for an estimate. She accepted the estimate of $400.00, and appellant began work on her fence. After he completed the job, Ms. Connerly gave him two hundred dollars in cash, and she informed the appellant that she would have to get the rest of the money from her “old man.”
Two weeks passed from the completion of the job, and repeated attempts by appellant to contact Ms. Connerly went unanswered. She then appeared at appellant’s home at approximately 8:15 a.m. on April 26, 2005, and gave appellant the check already made out for $200.00. He proceeded to the bank at approximately 10:00 a.m. and presented the check to the teller, Ms. Duskin. Appellant represented that he asked Ms. Duskin to verify the check because he had waited two weeks to receive payment. When Ms. Duskin stepped away from her station and approached the police officer, appellant knew that something was wrong. He became angry at Ms. Connerly, and he left the bank to find her and |4bring her back to the bank. Appellant’s attempts to locate Ms. Connerly were unsuccessful. He was arrested at his home two days later by police.
On cross-examination, appellant testified that when he was arrested, he gave the officers Ms. Connerly’s name, but he neglected to give the officers her phone number and address. He further testified that he thought the check was good when he received it from Ms. Connerly.
ERRORS PATENT
A review of the record reveals that there are no errors patent.
SUFFICIENCY OF EVIDENCE
In State v. Spencer, 2001-1066 (La.App. 4 Cir. 11/14/01), 802 So.2d 811, this Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. 5Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reason *957 able hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Id., quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-07.
In his sole assignment of error, the appellant asserts that the state’s evidence failed to prove that he intentionally defrauded the bank or knew that the check was stolen. The appellant argues that the state’s circumstantial evidence did not prove intent to defraud the bank by means of false or fraudulent pretenses, practices, transactions, representations, or promises. He also argues that no evidence was presented to show a scheme or artifice to defraud because only a single check was presented that he had no reason to believe was stolen. The appellant represents that at best, the evidence shows a forgery, which he notes is not a responsive verdict. He also notes that the state did not present a handwriting expert; however, the jury apparently believed Mr. Jones’ testimony that he did not write the check and the teller’s testimony that the signature on the check did not match the signature on file for Mr. Jones.
La. R.S. 14:71.1 relative to bank fraud provides in pertinent part:
A. Whoever knowingly executes, or attempts to execute, a scheme or artifice to do any of the following shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than one hundred thousand dollars, or both:
(1) To defraud a financial institution.
(2) To obtain any of the monies, funds, credits, assets, securities, or other property owned by or under the custody or control of a | ¿financial institution by means of false or fraudulent pretenses, practices, transactions, representations, or promises.
La. R.S. 14:71.1.
There are no reported Louisiana cases that deal with the evidence necessary to prove the crime of bank fraud. However, the Louisiana statute is similar to the federal statute, 18 U.S.C.A. Section 1344, which provides:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
Under the federal statute, the intent necessary to sustain a bank fraud conviction under both subsections has been characterized as the intent to deceive a bank in order to obtain from it money or other property. U.S. v. Staples, 435 F.3d 860 (8th Cir.1/23/06), cert. denied, — U.S. —, 127 S.Ct. 148, 166 L.Ed.2d 108 (2006). Under federal law, “[sjpecific intent is established by “the existence of a scheme which was ‘reasonably calculated to deceive persons of ordinary prudence and comprehension,’ and this intention is shown by examining the scheme itself.”” United States v. Green, 745 F.2d 1205, 1207 (9th Cir.1984) (quoting, United States *958 v. Bohonus, 628 F.2d 1167, 1172 (9th Cir.1980)).
Several federal circuits have rejected the requirement of an intent to harm or create a risk of loss to a financial institution, and have upheld convictions in the absence of any such intent. See United States v. McNeil, 320 F.3d 1034, 1038 (9th Cir.2003); United States v. De La Mata, 266 F.3d 1275, 1298 (11th Cir.2001); United States v. Kenrick, 221 F.3d 19, 27 (1st Cir.2000); United States v. Sapp, 53 7F.3d 1100, 1103 (10th Cir.1995). One circuit has gone so far as to say that there is a violation of § 1344(2) if the defendant merely intends to defraud someone, and then causes a bank, as an unwitting instrumentality, to transfer funds pursuant to a fraudulent scheme. United States v. Everett, 270 F.3d 986, 991 (6th Cir.2001). Additionally, a conviction for bank fraud has been upheld where there was no actual loss to a financial institution because the court reasoned that requiring an actual loss would not permit the punishment of conduct that could lead to a loss. See United States v. Mason, 902 F.2d 1434, 1443 (9th Cir.1990). The Louisiana Supreme Court has held that the decisions of federal courts interpreting federal statutes are highly persuasive in interpreting state statutes patterned after those federal statutes. Seegers v. Parker, 256 La. 1039, 241 So.2d 213 (1970); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (La.1963). However, “[wjhile decisions of federal appellate courts are considered persuasive, they are not binding on the courts of the state of Louisiana.” Beard v. Seacoast Elec., Inc., 06-1244, p. 4 (La.App. 4 Cir.2007 1/24/07), 951 So.2d 1168, 1171 (citing, State v. White, 321 So.2d 491, 494 (La.1975)).
With those principles in mind, we turn to the appellant’s challenge to the sufficiency evidence supporting his bank fraud conviction. The jury concluded that the appellant knew the check was forged when he presented it to the bank based upon his hesitation in presenting his identification and his flight from the bank once he realized the validity of the check was in question. The appellant also failed to lead the police to whom he alleges was the true culprit, Ms. Connerly, which also makes his testimony less credible. Therefore, we find that the jury could reasonably infer the appellant’s knowing attempt to execute a bank fraud scheme, as required by the Louisiana statute, from the facts adduced at trial.
|RThe appellant’s argument that there was no evidence to show a scheme or artifice to defraud the bank is also unpersuasive. Black’s Law Dictionary states that a scheme or artifice to defraud consists simply of forming a plan or devising some trick to defraud another. Black’s Law Dictionary 1344 (6th ed.1991). Notably, the appellant has presented no case law showing that multiple acts would be required to prove a scheme or that bank fraud consists solely of falsifying loans or accounts as he represents. In fact, a scheme may be inferred from the evidence presented at trial; a check that was presumably stolen the night before was presented to the bank early the next morning. Though the appellant argues that he committed no crime against the bank, the bank’s liability would have certainly become an issue had the bank honored the check forged on Mr. Jones’ account. The fact that the bank did not actually suffer a loss is of no consequence.
The appellant’s assignment of error has no merit. We find that the circumstantial evidence in the matter before us provides sufficient support for the appellant’s bank fraud conviction. Given that the evidence was sufficient, the jury’s determination on this issue must stand.
*959 Based on the foregoing, we find the evidence sufficient to support the appellant’s conviction for bank fraud, and, therefore, affirm the appellant’s conviction and sentence.
DECREE
Accordingly, the appellant’s conviction is affirmed. The appellant’s sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.
ARMSTRONG, C.J., concurs.