26 So.3d 303 (2009)
STATE of Louisiana, Appellee,
v.
Stacey James LINNEAR, Appellant.
No. 44,830-KA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 2009.
*304 Peggy J. Sullivan, Louisiana Appellate Project, for Appellant.
Charles R. Scott, II, District Attorney, Suzanne Owen, Sarah Midboe, William Edwards, Assistant District Attorneys, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
CARAWAY, J.
The defendant, Stacey J. Linnear, was charged by bill of information with second degree battery in violation of La. R.S. 14:34.1. A jury convicted the defendant as charged and the trial court sentenced him to four years and nine months at hard labor with credit for time served. Because the evidence was sufficient to convict the defendant and because his near maximum sentence is not excessive, we affirm the conviction and sentence.

Facts
In the early morning hours of October 6, 2007, an unidentified man was carried out of Shreveport's Kokopelli's nightclub by club security after he was physically attacked by another patron. Security placed the man, who was unconscious, on the sidewalk outside the club. Police officers patrolling the downtown area immediately responded. The man was unresponsive to questioning and his face appeared severely disfigured. The victim was taken by ambulance to LSU Medical Center, where he was treated for multiple fractures of the jaw, an injury to his head and later, a decubitus ulcer on his back. Police were unable to locate any witnesses at the scene and surveillance videos failed to capture what went on inside the club.
The victim was later identified as John Fuggins. Fuggins recalled that prior to entering the club that evening he, along with his cousin and two other friends, attended a high school football game. Fuggins admitted that they then proceeded to ride around drinking, smoking marijuana, and taking Ecstasy. Around midnight, the friends arrived at Kokopelli's. Fuggins, only 20 years of age at the time, entered the nightclub through the VIP entrance. Fuggins remembers going to the bar to get a drink and then walking around the club with his cousin. He claimed that he was trying to stay out of trouble because he did not want to get thrown out for being underage. Fuggins' last memory from the night in question was throwing a neighborhood gang sign in rhythm to the music. Fuggins testified that he was not affiliated with a gang and that he was merely representing the neighborhood in which he was raised.
On October 9, 2007, pursuant to an anonymous tip received by Fuggins' mother, Detective Demery, of the Shreveport police department's homicide division, picked up defendant, Stacey J. Linnear, for an interview. After waiving his Miranda[1] rights, Linnear agreed to make a statement, the admissibility of which is not contested. In his statement, Linnear recalled *305 arriving at Kokopelli's around 11:00 p.m. on October 5, 2007. He purportedly did not have anything to drink that evening. He alleged that he had been at the club for a couple of hours when he witnessed Fuggins first staring at him and then circling around him. He further stated that Fuggins threw gang signs in his face and kept bumping him as he walked past. According to Linnear, he had let Fuggins' behavior "pass" too many times and something "clicked" as he "went off" on him. He punched Fuggins with enough force to cause him to fall to the club's cement floor. In his statement, Linnear admits that after the first punch, Fuggins did not have an opportunity to fight back. The defendant proceeded to get on top of Fuggins and hit him repeatedly before leaving the club. Defense witness, Christopher Crutchfield, who failed to come forward initially, but was later interviewed by investigators, told detectives before trial that "the first lick knocked [the victim] out." Crutchfield later testified that Fuggins' eyes were still open after the first punch. Crutchfield also testified that because of Fuggins' behavior, he felt that Linnear was in danger and only used the force necessary to defend himself.
After Detective Demery concluded the interview with Linnear, he was taken into custody and charged with second degree battery in violation of La. R.S. 14:34.1. A jury convicted Linnear of the crime charged and he was sentenced to four years and nine months at hard labor, with credit for time served. Defendant now appeals.

Sufficiency of the Evidence to Convict
Linnear argues that the evidence presented at trial was insufficient to support his conviction. He argues that because he was acting in self-defense, he lacked the specific intent to cause severe bodily harm. Linnear additionally asserts that it is unclear what actually caused Fuggins' injuries. Therefore, the evidence used to convict the defendant was purely circumstantial and the state failed to exclude every reasonable hypothesis of innocence.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529; State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such *306 cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La. App.2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Robbins, 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
La. R.S. 14:34.1 defines second degree battery as a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. The statute defines serious bodily injury as bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Second degree battery is a specific intent crime and therefore the evidence must show that the defendant intended to inflict serious injury. State v. Fuller, 414 So.2d 306 (La.1982); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Davies, 35,783 (La.App.2d. Cir.4/5/02), 813 So.2d 1262, writ denied, 02-1564 (La.5/9/03), 843 So.2d 389. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377. See also State v. Allen, 41,548 (La. App.2d Cir.11/15/06), 942 So.2d 1244, writ denied, 07-0530 (La.12/7/07), 969 So.2d 619.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of Jackson v. Virginia, supra. State v. Huizar, 414 So.2d 741 (La.1982); State v. Steward, 42,643 (La.App.2d Cir.11/14/07), 969 So.2d 804; State v. McGee, 37,919 (La.App.2d Cir. 12/10/03), *307 862 So.2d 452. State v. Hill, supra. In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. State v. Huizar, supra.
In this case, the state proved each of the essential elements of the crime of second degree battery beyond a reasonable doubt. There is ample evidence proving that the defendant committed a battery upon the victim and that he did so with the specific intent to cause serious bodily injury.
Linnear argues he struck Fuggins in self-defense, thereby negating the possibility he was acting with the specific intent to commit second degree battery. The use of force or violence upon the person of another is justifiable under La. R.S. 14:19 when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Robinson, 37,043 (La.App.2d Cir.05/14/03), 848 So.2d 642. The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, supra, citing State v. McClure, 34,880 (La. App.2d Cir.08/22/01), 793 So.2d 454.
It is clear from the record that Linnear's actions were neither reasonable nor necessary. Although Fuggins may have bumped into Linnear once or twice and even waved gang signs in his face, the response of beating the defendant unconscious was unreasonable. The force was also unnecessary because Linnear admitted that after the first punch, Fuggins was not in a position to fight back. It is evident that Linnear was not fighting to protect himself, but rather because he felt disrespected by the young victim's actions. The fact that he continued to beat the victim after he had fallen unconscious is clearly indicative of a specific intent to inflict serious bodily injury. Although the defense's sole witness testified that Linnear was acting in self-defense, the jury's decision to reject his testimony is clearly supported by the law and evidence and must be given great deference.
Furthermore, the injuries sustained by Fuggins alone support a conclusion that Linnear had the specific intent to cause serious bodily injury. The statute defining serious bodily injury includes unconsciousness, extreme physical pain, and protracted and obvious disfigurement, all of which Fuggins suffered. The treating emergency room resident at LSU Medical Center, Dr. Brandon P. Smith, testified to the extent of Fuggins' injuries. Fuggins remained in the Intensive Care Unit, sedated, and on mechanical ventilation for four days. As defined by the Glasgow Coma Scale, Fuggins suffered from a "severe closed-head injury." Fuggins also sustained three fractures to his jaw, requiring two corrective surgeries. Additionally, his mouth had to be wired shut, confining him to a liquid diet. Moreover, Fuggins was forced to remain in bed for a prolonged period of time, causing a breakdown of skin on his back, resulting in a decubitus ulcer.
In addition to arguing he lacked the requisite specific intent to cause great bodily injury, Linnear asserts that there was insufficient evidence to show that Linnear *308 caused Fuggins' injuries. He asserts that only circumstantial evidence links Fuggins' injuries to Linnear and that this circumstantial evidence does not exclude every reasonable hypothesis of innocence. In the defendant's own statement, he admitted that he reacted to the victim's antics by knocking him to the ground and continuing to punch him. Linnear's statement was corroborated by Crutchfield who testified that "when he [Fuggins] fell, Stacey got on him; hit him two more times." Although the defense offered alternative hypotheses, suggesting that Fuggins' injuries may have been caused by other patrons dancing or by security personnel when they carried him out of the club, the jury chose to discredit these explanations. Rather, the jury found that the strength of circumstantial evidence provided a direct link between Linnear's admitted acts and Fuggins' injuries and excluded all hypotheses set forth by the defense.
Finally, the defense claims discrepancies in the testimony given by state witnesses to discredit their veracity. These discrepancies were insignificant details, such as what type of alcohol the victim and his friends were drinking, whether the club was crowded or not, and whether Fuggins was asked for identification by club employees upon entering the club. These incongruities were provided by witnesses who did not see the altercation and therefore do not diminish the sufficiency of the proof of the crime.
From the evidence, the jury could have reasonably inferred that after feeling disrespected, Linnear intentionally attacked Fuggins with the specific intent to inflict serious bodily injury. When these facts are viewed in the light most favorable to the prosecution, a rational trier of fact could have rejected Linnear's claims of self-defense and found the essential elements of the crime proven beyond a reasonable doubt. This assignment of error is without merit.

Excessive Sentence
Linnear additionally argues that the sentence imposed is unconstitutionally excessive. He contends that he was only induced to use violence after Fuggins acted aggressively toward him. He further claims that there is no indication that this type of behavior will be repeated, given that he is a first time felony offender and that he has participated in rehabilitative programs while incarcerated, including a course in anger management. Finally, the defense asserts that this sentence places an undue hardship on Linnear's family because he will be unable to work and provide support. Linnear is charged with the care of his disabled child who suffers from cerebral palsy, and he has recently endured other family difficulties, including the death of his father, a stroke suffered by his mother, and an attack on his wife.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La. *309 App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La. App.2d Cir.8/13/08), 989 So.2d 259. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La. App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La. App.2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
Under La. R.S. 14:34.1, the maximum sentence that may be imposed for the crime of second degree battery is five years at hard labor. Linnear was sentenced to four years and nine months at hard labor, with credit for time served. The trial court utilized the sentencing guidelines found in Article 894.1 and provided an adequate factual basis for the sentence imposed. The court considered the gravity and seriousness of the offense, the injuries sustained and the violent nature of the attack. The trial court also considered the defendant's criminal history, which included misdemeanor convictions for disturbing the peace by fighting and domestic abuse battery. Specifically, the trial court noted the batteries and the fact that defendant's prior probations had been revoked for noncompliance.
In reviewing the sentence for constitutional excessiveness, we find no abuse of discretion in the trial court's choice of sentence. Linnear became angered, lost control of himself, and knocked the defendant unconscious. He then left the scene, leaving the victim unattended in the middle of the dance floor. The beating was so severe that Fuggins was in intensive care for weeks and is still undergoing a lengthy and costly rehabilitative process.
In light of Linnear's criminal history of violence to persons and the seriousness of the injuries suffered by the victim, we find the near maximum sentence to be appropriately tailored to this defendant. Thus, the sentence imposed does not shock the sense of justice. This assignment is therefore without merit.

*310 Conclusion

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of second degree battery proven beyond a reasonable doubt. The jury apparently believed the victim's account of the incident and rejected the defendant's assertion of self-defense. Moreover, the imposed sentence does not shock the sense of justice and is therefore not excessive.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).