MOORE, J.
1, Henry Earl Cunningham appeals his conviction and sentence on one count of bank fraud, La. R.S. 14:71.1. For the reasons expressed, we affirm.

Factual Background

Cunningham worked as a cab driver based at the casinos in Shreveport and Bossier City. He met and befriended his codefendant Shalondrea “Shea” Holmes in 2009 when he gave her a ride from Russell Road in Shreveport to one of the casinos. He gave her his cell phone number and, for weeks afterward, she called him regularly for rides to and from Sam’s Town or Eldorado. She normally paid cash, but on occasions she had none; she testified that she once paid him with a check. She admitted that she was living on Russell Road with her grandmother, Earline Thomas,[1] and that she had once stolen Ms. Thomas’s checks and forged her signature on them. In fact, Ms. Holmes was on probation for this charge in 2009, but she did not disclose this fact to Cunningham.
On August 28, 2009, Ms. Holmes called Cunningham for a cab ride. She told him that she did not have any money for fare but that she did have some of her grandmother’s checks to pay him.[2] She did not testify that she ever told him she had no authority to write checks on her grandmother’s account. However, she did tell him that she had no ID so Cunningham would have to cash the check at a Regions Bank. Ms. Holmes filled out the front of the check, making it payable to Cunningham in the amount of $415. In the memo line she wrote “Maintenance Work” and then signed Ms. L.Thomas’s name. She then told Cunningham to drive her to the Regions Bank branch on Viking Drive in Bossier City where he went in to cash the check. Because he did not have an account there, in addition to indorsing the back of the check, he had to present his driver’s license to the teller, who noted on the check the last four digits and expiration date of his license and his date of birth. The transaction was also recorded on digital camera. He received the $415 and returned to the car; according to Ms. Holmes, he kept $215 for himself and gave her the other $200.
A few days later, Ms. Thomas noticed that her account had been debited $415 for a check she did not sign and payable to a person she did not know, Henry Cunningham. She went to Regions Bank and filled out an affidavit that her check had been forged; her money was ultimately refunded. Ms. Thomas testified that her granddaughter had previously stolen her checks, and this time she asked her who Cunningham was, but Ms. Holmes said she did not know. Later, however, Ms. Holmes put her grandmother on the phone with Cunningham, who said he was sorry and “he did not know that they were not her checks.” Ms. Thomas added that she had never authorized Ms. Holmes to sign her cheeks.
Regions Bank forwarded to Bossier City police the check, Ms. Thomas’s affidavit and surveillance video images of Cunningham cashing the check on August 28. The bank’s security officer, Charles Upchurch, testified that at some point Cunningham called him but he could not recall the gist of the conversation.
RBossier City police obtained a warrant and arrested Cunningham on October 12, *480 2009. Detective Leander Matthews interviewed him at the police station. According to Det. Matthews, Cunningham said, “I know what this is all about. I’ve spoken with Chuck Upchurch on the telephone. I haven’t done anything wrong. The young lady that gave me the check was [Ms.] Holmes.”[3] Cunningham then described how he and Ms. Holmes had become friends and he drove her around frequently, but he felt she was trying to “play” him by saying she had no money for fare, telling him she had some checks of her grandmother’s, and that he would have to cash one because she had no ID. Nevertheless, he cashed the check and split the proceeds with her; however, he “should have known something wasn’t quite right with the check.” On cross-examination, Det. Matthews testified that he also prepared an arrest warrant for Ms. Holmes, but that he called the judge and recommended a bond on her own recognizance.
Ms. Holmes testified as outlined above. She admitted than when Detective Matthews first asked her about the check, she lied to him, but later told the truth; she testified that her grandmother never asked her about the check, but when Ms. Thomas asked who Cunningham was, she denied knowing him. She admitted stealing checks twice from Ms. Thomas, and that the state would recommend leniency if she “testified good” against Cunningham.
14After a two-day trial in October 2010, a six-member jury found Cunningham guilty as charged of bank fraud, La. R.S. 14:71.1; motions for new trial and post verdict judgment of acquittal were denied. At sentencing in January 2011, the district court reviewed Cunningham’s PSI and found that he had seven prior felony convictions. The court therefore imposed the maximum sentence of 10 years at hard labor; a motion for reconsideration was denied. This appeal followed.

Discussion: Sufficiency of the Evidence

By his first assignment of error, Cunningham urges the evidence was insufficient to convict him of bank fraud. Specifically, he argues the state failed to prove he had the specific intent to defraud the bank. He contends that it was Ms. Holmes who stole the check, wrote it out, forged Ms. Thomas’s signature, and told him to cash it because she had no ID; she never told him she lacked authority to issue the check to him; in light of his serious criminal history, he would never knowingly pass a stolen check. He also suggests that Ms. Holmes’s credibility was fatally impaired, and that his mere presence at the scene of her crime did not make him a principal to the offense. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427.
The state responds that viewed in the light most favorable to the prosecution, the evidence proved every essential element of the offense.
The standard of appellate review is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its appreciation of the evidence for that of the fact finder. State *481 v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219.
Specific intent may be inferred from the circumstances and actions of the defendant. State v. Spears, 2005-0964 (La.4/4/06), 929 So.2d 1219. Whether the defendant possessed the requisite intent in a criminal case is for the fact finder to determine, and a review of the correctness of this finding is guided by the Jackson v. Virginia standard. State v. Huizar, 414 So.2d 741 (La.1982).
The crime of bank fraud is defined in R.S. 14:71.1 as follows:
A. Whoever knowingly executes, or attempts to execute, a scheme or artifice to do any of the following shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than one hundred thousand dollars, or both:
(1) To defraud a financial institution.
(2) To obtain any of the monies, funds, credits, assets, | ^securities, or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, practices, transactions, representations, or promises.
In State v. Forbs, 07-1007 (La.App. 4 Cir. 4/23/08), 983 So.2d 954, the court noted that R.S. 14:71.1 is similar to the federal crime of bank fraud, 18 U.S.C. § 1344, and that the intent necessary to sustain a conviction under § 1344 is “the intent to deceive a bank in order to obtain money or other property.”[4] Id. at 6, 983 So.2d at 957, citing United States v. Staples, 435 F.3d 860 (8 Cir. 1/23/06), cert. denied, 549 U.S. 862, 127 S.Ct. 148, 166 L.Ed.2d 108 (2006). Further, specific intent is established “by the existence of a scheme which was ‘reasonably calculated to deceive persons of ordinary prudence and comprehension,’ and this intention is shown by examining the scheme itself.” Id., citing United States v. Green, 745 F.2d 1205 (9 Cir.1984).
Cunningham correctly shows that much of the conduct constituting the scheme or artifice to defraud was Ms. Holmes’s: she stole the check, filled it out and forged Ms. Thomas’s signature; she directed Cunningham to cash the check using his own ID; notably, she never told him she lacked authorization to use her grandmother’s checks, and perhaps even suggested otherwise. Nonetheless, Cunningham actually presented the check for payment at Regions Bank and received the cash proceeds; his part in the scheme or artifice was substantial. On the critical question of whether he participated knowingly, he admitted to Det. Matthews that “something wasn’t quite right with the check.” His misgiving was reasonable, in that 17Ms. *482 Holmes forged her grandmother’s name, an incident which a person of ordinary-prudence and comprehension would consider fraudulent. Also, she wrote that the check was for maintenance work, which he knew was false. Finally, he split the proceeds with Ms. Holmes, conduct from which a reasonable juror could find an intent to deceive a bank in order to obtain money. State v. Forbs, supra. On this record, the fact that Ms. Holmes executed the first part of the scheme, and omitted to tell Cunningham that the whole thing was a fraud, did not negate the showing that he knowingly intended to deceive Regions Bank to obtain money.
Viewed in the light most favorable to the prosecution, this evidence supports the jury’s finding as to every essential element of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, supra. This assignment of error lacks merit.

Excessive Sentence

By his second assignment of error, Cunningham urges the maximum sentence of 10 years at hard labor was excessive. He concedes that he has a criminal history but submits that he is not the worst kind of offender. He reiterates from his motion for reconsideration that the loss to Regions Bank was relatively small, only $415; he was gainfully employed at the time of the offense; there was no violence or threat of harm to anyone; and no substance abuse was involved. Finally, he contends that he has completed all the conditions of his prior felony convictions and thus would be a good candidate for rehabilitation.
|RThe state responds that Cunningham is a seventh felony offender, that prior rehabilitative efforts have failed and this evidence supports the district court’s choice of sentence.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App. 2 Cir. 12/9/09), 26 So.3d 303. When the record shows an adequate factual basis for' the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. No sentencing factor is accorded greater weight by statute than any other sentencing factor. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Linnear, supra.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. Normally, sentences at or near the maximum are reserved for the worst offenders and |9the worth offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. Ashley, 45,563 (La.App. 2 Cir. 9/22/10), 48 So.3d 332. Nevertheless, the sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. *483 Williams, 2003-3514 (La.12/13/04), 893 So.2d 7.
At the sentence hearing, defense counsel gave a long statement arguing Cunningham’s attenuated part in the criminal scheme and detailing other mitigating facts: his gainful employment as a cab driver, his role as a father and husband, his compliance with all prior prison sentences. The court, however, cited the PSI to show Cunningham’s seven prior felony convictions, starting with one for drug distribution in Illinois in 1986, others in Illinois, Indiana and Kentucky for a variety of offenses (possession of marijuana with intent, theft and receipt of stolen goods, three counts of theft and two counts of illegal possession of firearms), and ending with one for cocaine distribution in Indiana in 2005, resulting in a sentence of one to two years. He also had a 2008 arrest for shoplifting and a 2009 arrest for possession of controlled dangerous substances, for which no dispositions were shown. The instant offense occurred on August 28, 2009. This history supports the district court’s finding of an “ongoing lifestyle of committing serious felony offenses all the way from 1986 to 2010.” The PSI also shows that on at least one occasion, Cunningham’s probation was revoked because he committed another offense. This supports the court’s finding that even if Cunningham were eligible, he would not be a good candidate for parole or a | msuspended sentence.
On close examination, we do not find that the district court abused its great discretion or that the maximum sentence of 10 years at hard labor shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. This assignment lacks merit.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, we affirm the conviction and sentence.
AFFIRMED.

. Ms. Thomas is actually Ms. Holmes's great aunt, but Ms. Holmes refers to her as grandmother or "granny.”

. The check was on a joint account co-owned by Ms. Thomas and an elderly neighbor, a Ms. Brown, whom Ms. Thomas assisted with her banking.

. This portion of Cunningham's statement was made before he received his Miranda rights, but was ruled admissible in a free and voluntary hearing. This ruling is not contested on appeal.

. This section provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice — (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.”