Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,235-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DUSTIN CHARLES                              Appellant
ESCHENBACH

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 355,800

Honorable Katherine C. Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

NANCY F. BERGER-SCHNEIDER
JASON W. WALTMAN
RICHARD S. FEINBERG
Assistant District Attorneys

* * * * *

Before PITMAN, GARRETT, and McCALLUM, JJ.

**PITMAN, J**.

Defendant Dustin Charles Eschenbach was found guilty as charged of aggravated battery and attempted second degree murder. He was sentenced to 8 years at hard labor for the aggravated battery conviction and 25 years at hard labor, without benefit of probation, parole or suspension of sentence for the attempted second degree murder conviction. He now challenges the constitutionality of his sentences on appeal. For the following reasons, we affirm his convictions and sentences.

## FACTS

On February 16, 2018, Kimberly Michelle Wright and her boyfriend, Luther Allen Meshell, were stabbed multiple times by Defendant, who is Wright's adult son. Defendant was arrested and charged by bill of information with committing aggravated battery against Meshell, in violation of La. R.S. 14:34, and attempted second degree murder against Wright, in violation of La. R.S. 14:30.1 and 14:27. He pled not guilty. On March 11, 2019, a 12-person jury trial commenced with the following testimony and evidence.

Wright and Meshell testified that they lived together in Caddo Parish with Wright's mother and Defendant. Around 5:00 p.m. on February 16, 2018, as they were leaving the home to have dinner, Defendant said to Wright, "Tonight's your night." Wright found his comment to be threatening, but dismissed it as Defendant "talking crazy." When asked if she thought something was going to happen later, she answered, "Not nothing like what happened." She testified that she and her son argued a lot and he had anger issues, but they had never had any physical confrontations.

When Wright and Meshell returned home around 7:00 p.m., all the interior lights were on, the window blinds were raised and Defendant was standing in the kitchen. No words were exchanged as Meshell proceeded to the bedroom and Wright turned around to lock the front door. As she turned around, Defendant stabbed her in the neck with a steak knife. She screamed for help as he continued stabbing her in the head, upper arm and chest. Meshell returned and fought to get Defendant off of her. At some point in the struggle, Wright's finger was nearly severed by the steak knife and the knife handle was broken off. Once Meshell was able to free Wright from her son's attack, she ran to the bathroom, where she called 911 and then applied towels to the spray of arterial blood coming from her neck. The recording of Wright's 911 call was played for the jury.

Meshell and Defendant continued to struggle. Defendant stabbed at Meshell's head, upper shoulder and arm, and Meshell struck blows to Defendant's face and body. Only when Meshell threatened to gouge out his eye did Defendant stop and run out of the house. Meshell called 911 and grabbed a flashlight to help responders find the home in the dark.

Meshell testified that he, Wright and Defendant had been living together without any major conflicts or physical fights for one to two years; and while Defendant and Wright argued over "typical stuff," he had never been concerned that Defendant would be violent. He stated he had no idea what caused Defendant's behavior.

Wright testified that although Defendant appeared angry all the time and displayed hate for her, they had never had any physical altercations, and she did not have any expectation that Defendant would attack her. She stated that Defendant did not say anything before or during his attack on her.

2

Meshell was treated at the scene for stab wounds to his arms and shoulder and cuts to his head. Wright's wounds were more serious and included an almost two-inch deep cut to her neck, a badly cut jugular vein, a collapsed lung and an almost severed finger.

Captain Adam Hall, a paramedic with Caddo Parish Fire District Number Four, testified that upon responding to the 911 call, he found Wright barely conscious and bleeding uncontrollably from her neck. He stated that the amount of blood at the scene was horrific and that in 22 years, he had never seen so much blood. He estimated that Wright had lost almost two liters of blood when he arrived. He testified that the bright, red blood spurting everywhere indicated that Wright had a very serious neck wound, and he believed she was on the verge of dying as he struggled to control the bleeding and get her to the hospital.

Deputies Chris Stafford, Matthew Henry and Mark McLaughlin, of the Caddo Parish Sheriff's Department, also responded to the crime scene. All three officers testified that Defendant had blood all over him, but that the amount was inconsistent with his visible wounds. Dep. Stafford testified that as they drove the street attempting to find the address, Wright's boyfriend ran in front of his patrol car and told him that Defendant had run down the street and that he was wearing dark clothing. Soon thereafter, the dispatcher called over the radio and advised that Defendant was calling 911 claiming that he had been "jumped." The dispatcher directed Dep. Stafford to a house across the street and two doors down from the scene of the incident where he found Defendant sitting on the front porch. He read Defendant his *Miranda* rights, noticed that his speech was slurred, searched

3

him for a weapon and placed him in the back of the patrol car. He then transported Defendant to the sheriff's substation.

Deputy Henry was with Dep. Stafford the night of the incident. He stated that Dep. Stafford was unable to find a weapon on Defendant's person, even though Defendant told them he had a box cutter. He searched the area between the house where the incident took place and where Defendant was located, but failed to find a weapon. He set up crime scene tape and started a log, noting everyone who entered and exited the crime scene. He testified that he entered the home where the incident took place and that the hallway leading from the living room where the stabbing occurred to the bathroom where Wright was found was covered in more blood than he had ever seen in his life. Blood covered everything along the floor and walls.

Corp. McLaughlin testified that he was the third sheriff's unit to arrive at the scene. He met Meshell on the porch and noticed that he had cuts and puncture wounds to his head, his left shoulder and left arm. As the paramedics brought Wright out of the house, he saw that she was covered in blood and appeared unconscious. He stated that while he was there, crime scene investigator Officer Ti'a Moore-King and Detective Keith Fox arrived at the scene.

Deputy Kevin Calhoun testified that while he and Defendant were at the sheriff's substation in an interview room, Defendant informed him that he had a box cutter in one of his jacket pockets and asked him to remove it. He removed a box cutter from Defendant's jacket pocket and turned it in to the crime scene investigator.

Ofc. Ti'a Moore-King of the Caddo Parish Sheriff's Office testified that there were blood splatters outside the home in the driveway, on a car and leading up to the porch on the stairs. She entered the home and recovered a bloody broken knife handle by the front door and a bloody broken knife blade in the hallway. She stated that her numerous crime scene photographs show that the hallway and bathroom were saturated with blood. She also presented photographs of the lacerations and stab wounds that Meshell sustained to his head, left shoulder and left arm. Post-surgery photographs of Wright's injuries were introduced and included pictures of the trauma to her almost-severed finger and her head.

Detective Keith Fox of the Caddo Parish Sheriff's Office testified about his interviews with Defendant, Wright and Meshell concerning the events that night.

The state rested. After discussion with Defendant regarding his rights to testify and remain silent, he exercised his constitutional right to remain silent. The defense called no witnesses and rested.

In closing, the state argued that Defendant was guilty as charged on both counts of aggravated battery and attempted second degree murder because he repeatedly stabbed Wright and Meshell with the knife. It stated that Defendant demonstrated specific intent to kill his mother by stabbing her in the neck and head multiple times, causing her life-threatening injuries.

The defense argued that a responsive verdict for attempted manslaughter would be more appropriate than attempted second degree murder because Defendant clearly acted in anger or passion. Additionally, it argued that because the knife blade was broken off during the attack, it was not clear that Meshell was actually stabbed with the knife blade or just the

5

knife handle; and, therefore, there was no evidence beyond a reasonable doubt that the offense against Meshell would count as "aggravated." In rebuttal, the state argued that attempted manslaughter was inappropriate because there was no evidence of sudden passion or heat of blood caused by a provocation sufficient to deprive an average person of self-control or cool reflection. Instead, Defendant waited over two hours for Wright and Meshell to return home from dinner before attacking them.

On March 13, 2019, the jury returned a unanimous verdict of guilty as charged on both counts. On March 20, 2019, Defendant appeared before the trial court on his motion for post-verdict judgment of acquittal and for sentencing. It denied his motion for post-judgment verdict of acquittal, finding that all essential elements of both offenses were proven beyond a reasonable doubt. The defense waived sentencing delays, and the trial court proceeded with sentencing.

Defendant made a statement that he knew what he did was wrong, but that he did it for a reason — out of fear. Defendant then said, "Please, don't mess me up. Give me another chance at life."

The trial court stated the factual basis for the convictions — that Defendant stabbed his mother, cutting a major blood vessel in her neck, and he stabbed Meshell, who was trying to help Wright. It advised Defendant of the potential sentencing ranges for both convictions and of the time delays to seek an appeal and post-conviction relief.

After reviewing the sentencing guidelines set forth in La. C. Cr. P. art. 894.1, the trial court found the following aggravating factors were applicable in this matter. Defendant used actual violence and a dangerous weapon in a brutal attack against the victims. His conduct manifested

6

deliberate cruelty to the victims and resulted in significant permanent injury and economic loss. It further found that Defendant's attack on his mother in this "family violence situation" also constituted an aggravating factor, stating that the offenses were tragic, horrific, shocking and inconceivable.

In mitigation, the trial court noted that Defendant was young and had no history of criminal activity.

For the conviction of aggravated battery, the trial court sentenced Defendant to serve 8 years at hard labor. For the conviction of attempted second degree murder, it sentenced him to serve 25 years at hard labor, without benefit of probation, parole or suspension of sentence. He was also sentenced to pay court costs and a $250 fine to the indigent defender's board. The sentences were ordered to run concurrently. Additionally, it recommended Defendant for any available treatment and counseling for these convictions, which it designated as crimes of violence.

On March 22, 2019, Defendant filed a motion to reconsider sentence on grounds that the sentences imposed were constitutionally excessive and that the reasons given by the trial court were inadequate to support the severity of the sentences imposed. He also asserted that the trial court did not consider that he acted under strong provocation with substantial grounds to excuse or justify his criminal conduct and that he did not contemplate that his criminal conduct would cause serious harm. He also complained that the trial court did not consider that his conduct was unlikely to recur and he was likely to respond to probation. He contended that both sentences were excessive and that a lesser sentence would better serve the ends of justice.

The trial court denied Defendant's motion on March 26, 2019, finding that it lacked merit. It noted that it had specifically addressed the

aggravating and mitigating circumstances regarding Defendant's conduct and that for both convictions, the sentence imposed was less than the maximum. Defendant's motion for appeal, filed March 25, 2019, was granted.

## DISCUSSION

Defendant asserts that the trial court erred by imposing constitutionally excessive sentences, failing to articulate an adequate basis for his sentences and denying his motion to reconsider sentence. Specifically, Defendant contends that because he has no prior criminal history, the record does not support the trial court's conclusion that there was an undue risk that he would commit another crime if sentenced to probation or a suspended sentence. He also contends that because he was a 19-year-old first offender, the record does not support the trial court's conclusion that he needed corrective treatment by incarceration.

Defendant argues that the aggravating circumstances listed by the trial court would be present in every crime of this nature, which he believes renders the "aggravating circumstances" as not aggravating. Furthermore, he complains that the trial court did not ask him what he meant when he said that he committed the crimes for a reason — out of fear. Additionally, he asserts that the trial court failed to order a presentence investigation report and failed to garner any information about his history, mental health or family situation. Absent this information, he contends that the trial court could not particularize the sentences to him and the circumstances of his offenses.

In opposition, the state argues that Defendant was ineligible for a suspended sentence and that the record shows that the trial court sufficiently

8

addressed both aggravating and mitigating factors concerning his conduct before imposing the sentences. It contends that although Defendant was young and had no prior criminal history, the sentences imposed were not excessive because his conduct was deliberately cruel and vicious. It also pointed out that the trial court sentenced Defendant to less than the maximum penalty on each count and ordered that the sentences be served concurrently. Additionally, it noted that Defendant admitted that he knew his actions were wrong, but gave no apology and showed no remorse.

Battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. When committed with a dangerous weapon, the offense is deemed an aggravated battery. La. R.S. 14:34(A). Whoever commits an aggravated battery shall be fined not more than $5,000, imprisoned with or without hard labor for not more than 10 years, or both. La. R.S. 14:34(B).

Second degree murder includes the killing of a human being when the offender has a specific intent to kill. La. R.S. 14:30.1(A)(1). Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B).

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A). An attempt to commit second degree murder is punishable by imprisonment at hard labor for not less than 10, nor more than 50 years, without benefit of

9

parole, probation or suspension of sentence. La. R.S. 14:27(D)(1)(a); La. R.S. 14:30.1.

"Crime of violence" means an offense that has, as an element, the use, attempted use or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. La. R.S. 14:2(B). Defendant's two offenses, attempted second degree murder and aggravated battery, are included in the list of enumerated offenses and attempts that La. R.S. 14:2(B) deems as "crimes of violence." As a matter of law, a conviction for attempted second degree murder shall always be designated as a crime of violence. La. C. Cr. P. art. 890.3(C). Absent a recommendation by the district attorney to the contrary, a conviction for aggravated battery shall also be designated as a crime of violence. La. C. Cr. P. art. 890.3(B).

La. C. Cr. P. art. 893 provides for a suspended sentence and probation in certain situations and where allowed by law. A person convicted of attempted second degree murder is not eligible for a suspended sentence, which is restricted by La. R.S. 14:30.1 and 14:27. A person convicted of aggravated battery, with its maximum sentence of 10 years, may be eligible for a suspended sentence, if the offense was not committed against a family or household member, as defined by La. R.S. 14:35.3. That statute, which defines and prohibits domestic abuse battery, provides that "family member" means spouses, former spouses, parents, children, stepparents, stepchildren, foster parents and foster children, while "household member" means any

10

person presently or formerly living in the same residence with the offender and who is involved or has been involved in a sexual or intimate relationship with the offender, or any child presently or formerly living in the same residence with the offender, or any child of the offender regardless of where the child resides.

A trial court is not required to render a suspended sentence or probation on a first felony conviction and may consider whatever factors and evidence it deems important to a determination of the best interest of the public and the defendant. *State v. Hollins*, 50,069 (La. App. 2 Cir. 8/12/15), 174 So. 3d 710.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711; *State v. Gardner*, 46,688 (La. App. 2 Cir. 11/2/11), 77 So. 3d 1052. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596; *State v. Cunningham*, 46,664 (La. App. 2 Cir. 11/2/11), 77 So. 3d 477. When a defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, review of the sentence on appeal is restricted to that claim. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131; *State v. Turner*, 50,221 (La. App. 2 Cir. 1/20/16), 186 So. 3d 720, *writ denied*, 16-0283 (La. 2/10/17), 215 So. 3d 700.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a

11

purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Boehm*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Wing*, *supra*.

The court must state for the record the considerations taken into account and the factual basis for the sentence imposed. La. C. Cr. P. art. 894.1(C). The court must consider the defendant's personal history, the defendant's criminal record, the seriousness of the offense and the likelihood of rehabilitation. *State v. Boehm*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *Id*. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. *State v. Platt*, 43,708 (La. App. 2 Cir. 12/3/08), 998 So. 2d 864.

The trial court has wide discretion in imposing sentence within the statutory limits, so absent a showing an abuse of that discretion, a sentence will not be set aside as excessive. *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Boehm*, *supra*.

Review of the record discloses no abuse of discretion regarding the sentences imposed. After reviewing the factual basis for the convictions, the trial court addressed the aggravating and mitigating circumstances. It considered Defendant's youth and lack of prior criminal activity, but also

considered the brutality of these unprovoked knife attacks on two unarmed persons and the life-threatening harm and permanent injury that he caused his mother.

No information regarding Defendant's mental health or family history was provided for the trial court's consideration at sentencing. In his statement to the trial court, Defendant acknowledged that he knew his actions were wrong, yet he still demonstrated no remorse and made no apology for his actions, only asking that the trial court "not mess him up" and give him a second chance. Defendant's only explanation was that he acted intentionally, stating that he did it for a reason — "out of fear." Although Defendant had the opportunity to explain his position further, he did not.

After considering the above circumstances, the trial court imposed a sentence of 8 years out of 10 years for the aggravated battery of Meshell, and a mid-range sentence of 25 years out of 50 years at hard labor for the attempted second degree murder of his mother, Wright. In each case, the sentence imposed was less than the maximum allowed, and the trial court ordered that the sentences be served concurrently, specifically in consideration of Defendant's youth and first offender status. As noted above, Defendant was not eligible for a suspended sentence for his conviction of attempted second degree murder. It was within the trial court's discretion to determine whether a suspended sentence was in the best interest of the public and Defendant, and it did not find that a suspended sentence for Defendant's conviction of aggravated battery upon Meshell was warranted under the circumstances.

The trial court articulated a sufficient basis for both sentences. The sentences imposed are tailored to the offender and the offenses, are not out of proportion to the danger and life-threatening injuries caused and do not shock the sense of justice. There is no showing that these sentences are constitutionally excessive or that the trial court erred in denying Defendant's motion to reconsider sentence.

## CONCLUSION

For the foregoing reasons, the convictions and sentences of Defendant Dustin Charles Eschenbach are affirmed.

**AFFIRMED.**