WILLIAMS, J.
liThe defendant, Jasmond Osborne, was charged by bill of information with attempted first degree murder, a violation of LSA-R.S. 14:30 and LSA-R.S. 14:27, possession with intent to distribute a con *1088 trolled dangerous substance (marijuana), possession with intent to distribute a controlled dangerous substance (methylenedi-oxymethcathinone, i.e., ecstasy), violations of LSA-R.S. 40:966, and possession of a handgun while in possession of a controlled dangerous substance, a violation of LSA-R.S. 14:95(E). Pursuant to a plea agreement, the defendant pled guilty to attempted first degree murder. In exchange for the defendant’s guilty plea, the state agreed to dismiss the possfession of marijuana with intent to. distribute charge.[1] Thereafter, the defendant was sentenced to serve 30 years at hard labor, without the benefit of probation, parole or suspension of sentence. For the following reasons, we affirm.
FACTS
The defendant was arrested on January 4, 2012, and was subsequently charged with the attempted first degree murder of Officer Greg Walker, possession with intent to distribute marijuana, possession with intent to distribute ecstasy and possession of a handgun while in possession of a controlled dangerous substance, marijuana.
A preliminary hearing was conducted January 30, 2012, at which Cpl. Robert Robinson, of the Shreveport Police Department’s Narcotics Unit, testified to the following facts with regard to the narcotics investigation and the subsequent arrest of the defendant and his codefendants. During the [^course of the investigation, a reliable confidential informant (“C.I.”) informed law enforcement officers that drugs were being sold from a motel room at the Plantation Inn in Shreveport. A eontrolled buy was arranged to take place on January 4, 2012. After the C.I. completed the transaction, he informed the officers that he had seen a large amount of marijuana and several firearms in the motel room. The officers performed a field test of the substance purchased by the C.I.; the substance tested positive for marijuana. Subsequently, the officers obtained a search warrant for Room 236.
Cpl. Robinson stated that at 9:41 p.m., the Shreveport Police Department Special Response Team, dressed in tactical gear marked “POLICE,” announced “Shreveport Police, search warrant” and struck the door of Room 236 with a battering ram. According to Cpl. Robinson, the announcements were repeated as the ram was used to break through the door. Shortly thereafter, a gun was fired, and Officer Greg Walker was struck by .a bullet in his upper chest, near his throat. The officers left the room and ordered the inhabitants of the room to crawl outside. The defendant and two other men, Sirder-rick Wilson[2] and Bandarious Swinney, crawled from the room and were arrested.
One team of police officers continued to investigate the drug bust, while a separate team investigated the shooting of Officer Walker. During the investigation, the police officers learned that the adjoining room, Room 238, was reserved by the same individual as Room 236. The officers | ^obtained and executed a search warrant for Room 238, where they encountered two more individuals who were involved in drug distribution.[3] The officers recovered over $10,000 in cash, approximately six pounds of marijuana, two ecstasy tablets, *1089 ledgers documenting drug transactions, sandwich bags, a digital scale, cell phones, a .32 caliber revolver with five rounds and an empty casing, a .38 caliber revolver and a 9mm handgun. Swinney, Wilson and the defendant admitted to being armed with handguns, explaining that they previously had been victims of a robbery.
Further, the defendant informed the officers that his role in the enterprise was to protect the money and transport it back to Texas after all the marijuana was sold. The defendant also stated that he did not hear the officers yelling “police.” He maintained that when he heard a noise outside, he thought they were being robbed. He stated that he responded by firing one shot.
According to Cpl. Robinson, all the suspects, except the defendant, admitted to police officers that they heard the announcements and were aware that the police were entering the room before the defendant fired the gun. Cpl. Robinson also testified that after the officers breached the door to Room 236, Officer Walker was shot as he was preparing to throw a distraction device into the room. The bullet fired by the defendant traveled through a piece of cardboard taped over a broken window to the right of the door before striking the officer in the chest. At the conclusion of the hearing, the trial court found probable cause existed for the four offenses [¿with which the defendant was charged.[4]
After the jury had been selected (but not sworn), the trial court held a free and voluntary hearing to determine whether the defendant’s post-arrest statements to law enforcement officers were admissible at trial. During this hearing, the prosecutor and defense counsel addressed the trial court with regard to plea discussions. The following colloquy took place:
PROSECUTOR: [T]he State had initially offered the defendant to plead to count one as charged to attempted first degree murder of a police officer, to be sentenced by the Court.
No agreements to sentence, we would go into a sentencing hearing, to allow [defense counsel] to present any evidence on behalf of his client, allow the State to present any aggravating factors on behalf of our prospective clients.
I had indicated if he [was] to do that that we would dismiss all other counts in the bill of information pertaining to the possession with intent to distribute marijuana, and his range would be twenty to fifty, in that fashion. I’ve tendered this offer to [defense counsel]. I know he’s had extensive conversations with his client in regard to this offer[.]
* * *
DEFENSE COUNSEL: [W]hat [the prosecutor] said is correct, he has made an offer that I felt was a very fair offer. I have recommended to my client that he accept it, that he go through a sentencing hearing. With his total | slack of any record that that would be in his favor, plus the fact that he accept the responsibility for his actions.
[[Image here]]
I have and continue to recommend as strongly as I possibly can that this is the absolute last moment he can accept that offer. I’ve recommended it to him but his instructions to me are that he wishes to reject that offer. Is that correct, Jasmond?
*1090 DEFENDANT: Yes, sir. I was trying to get a lower charge.
[[Image here]]
I was asking them in the hallway, you know, about the attempted first degree murder and I was trying to see about aggravated battery, you know.
[[Image here]]
I was just trying to get a lower thing. I was going to plead out to be seven to ten on the aggravated battery, sir, because prior to — my history I ain’t never been in trouble or jail or nothing.
COURT: All right sir, let’s make sure we’re very clear. I don’t know of there ever being an "offer by the District Attorney for a less[er] charge of aggravated battery. The charge is and has always been attempted first degree murder of a police officer, that’s been the charge.
DEFENDANT: Yes, sir.
COURT: And by law that carries a minimum mandatory term if convicted of twenty years, and I believe that’s without benefit of probation, parole or suspension of sentence, up to fifty years.
DEFENDANT: Yes, sir.
* * *
| fiCOURT: [I]t is not up to the Court to make decisions regarding the charging[.j [I]t’s up to the elected District Attorney. The elected District Attorney is proceeding as charged and your choice, sir, would be to plead guilty or plead not guilty, as you have done. DEFENDANT: Yes, sir.
[[Image here]]
COURT: And, by the way, the Court has made no promises at all about sentencing.
[[Image here]]
All I know is it would be between a minimum of twenty years without benefit of probation, parole or suspension of sentence, up to fifty, and I would make a decision hearing all the information that I need to hear in a sentencing hearing.
* * *
The hearing proceeded with the testimony by the investigating officers who had obtained statements from the defendant after his arrest.[5] The officers confirmed that the defendant was advised of his Miranda rights, acknowledged that he understood them and signed a waiver of rights form. The waiver of rights form was admitted into the record. The officers also testified that the defendant did not appear to be intoxicated or under the influence of any substances when he made the statements. Additionally, the officers testified that the defendant made the following statements: he was the “money man” and his role was to transport the money back to Houston, Texas after the marijuana was sold; he was sitting by the window next to the |7door when he heard a noise; he thought they were being robbed; he fired his gun through the window. After hearing the testimony, the trial court ruled that the defendant’s statements were freely and voluntarily made and, therefore, were admissible at trial.
Subsequently, the defendant announced that he would withdraw his prior plea of not guilty and would plead guilty as *1091 charged to attempted first degree murder. Thereafter, the trial court noted that a sentencing hearing would be conducted at which the court would accept evidence from the state, as well as “anything [the defendant] wants to present, family members, any other testimony or evidence that he wants to present in terms of background and mitigation[.]”
During the hearing, the state noted the following plea agreement for the record: in exchange for the defendant’s guilty plea, the charge of possession of marijuana with intent to distribute would be dismissed; there was no agreement as to sentencing; the defendant would be sentenced following a sentencing hearing; and the sentence would be according to the guidelines, which prescribed a range of 20-50 years at hard labor.
After being placed under oath, the defendant stated that he was 26 years old. He also stated that he understood that there was no sentencing agreement and that he was subject to a sentencing range of 20-50 years’ imprisonment at hard labor, to be served without benefit of probation, parole or suspension of sentence. The trial court reiterated that both the defense and the prosecution would be given the opportunity to present witnesses and “anything else they wanted” at a sentencing hearing. The j seourt then advised the defendant that by pleading guilty, he would waive his right to a jury trial, his right to confront and cross-examine witnesses and his right to remain silent. The defendant stated that he understood the rights he was waiving and the sentencing range. He also confirmed that no one promised him anything or coerced him into pleading guilty.
Subsequently, the state provided the factual basis for the plea. The defendant confirmed that the facts were correct[6] and reaffirmed that it was his decision to plead guilty. He also confirmed that he understood the nature of the charge and that it was a felony offense.
The trial court found there was a factual basis for the plea and that the guilty plea was freely and voluntarily entered. A sentencing hearing was scheduled for December 3, 2012, to allow the state and the defense an opportunity to present witnesses.
The defendant appeared for sentencing on the scheduled date. The prosecutor informed the court that defense counsel had tendered an offer to the state for “an agreed upon sentence” of 30 years’ imprisonment at hard labor, with credit for time served. The prosecutor also informed the court that Officer Walker had consented to the recommended sentence; Officer Walker confirmed his consent on the record.
The defendant’s mother, Martha Renee Franks, made a statement on her son’s behalf. She stated that the defendant had never been in trouble or 19caused problems in school. She also stated that her son made a mistake and she asked Officer Walker’s family to forgive him.
The trial court accepted a letter that the defendant had written to the court and read the letter for the record. In the letter, the defendant apologized and expressed his remorse for shooting Officer Walker, describing the incident as “a mistake and a bad decision.” . The defendant *1092 also addressed Officer Walker in court and stated that he was truly sorry for his actions and that he did not intend to shoot the officer.
Thereafter, the trial court stated that this was a serious case that called for a vigorous prosecution and an appropriate sentence. The court noted the defendant’s age, and the statements to the court by the defendant and his mother. The court also noted the sentencing agreement between the prosecutor and the defense, for 30 years at hard labor. It also noted that the crime carried a sentencing range of 20 to 50 years. The trial court then sentenced the defendant to serve 30 years in prison at hard labor, without benefit of probation, parole or suspension of sentence, with credit for time served.
On July 6, 2013, the defendant filed an application for post-conviction relief and raised claims of ineffective assistance of counsel. The defendant argued that his guilty plea was rendered involuntary because his attorney failed to advise the trial court that he (the defendant) did not know the noise he heard was caused by law enforcement officers executing a search warrant. The state filed procedural objections. In a supplemental filing, the defendant argued that his attorney failed to file an appeal of his linsentence after stating that he would do so. The trial court denied the application, finding the defendant’s claims were without merit. On supervisory review, this Count denied the writ but noted that the defendant was “not precluded from seeking an out-of-time appeal[.]”[7] Subsequently, the defendant filed a motion for an out-of-time appeal; the trial court granted the motion.[8]
The defendant appeals.
DISCUSSION
The defendant contends the sentence imposed was not in conformity with the plea bargain agreement. According to the defendant, he was promised a sentencing hearing as part of the plea agreement; however, he was not given the benefit of a presentence investigation report and was not given the benefit of a “full” sentencing hearing. He maintains that he should either be allowed a sentencing hearing, or to withdraw his guilty plea.
If a defendant is convicted of a felony offense or a misdemeanor offense that has been reduced from a felony, the court may order the Department of Public Safety and Corrections, division of probation and parole, to conduct a presentence investigation. LSA-C.Cr.P. art. 875(A)(1). | nA presentence investigation may be ordered by the trial court; however, it is well settled that such an investigation is not a right of the accused and is not mandatory. Id.; State v. Wimberly, 414 So.2d 666 (La.1982); State v. Armstrong, 32,279 (La.App.2d Cir.9/22/99), 743 So.2d 284, writ denied, 99-3151 (La.4/7/00), 759 So.2d 92.
In the instant case, the trial court did not order a presentence investigation. Article 875 states that a trial court may *1093 order a presentence investigation; however, the court is not required to do so. Neither the defendant nor his retained counsel requested a presentence investigation prior to the date of sentencing. Additionally, the defendant did not object to the lack of a presentence investigation at the time of sentencing. Therefore, we find that the defendant was not entitled to a presentence investigation and the trial court did not err in failing to order one.
Additionally, the record belies the defendant’s contention that he received neither the benefit of a “full” sentencing hearing nor the complete compliance with the plea bargain agreement. Before and after the guilty plea colloquy, the trial court informed the defendant that he would be allowed to present any information or testimony for consideration at his sentencing. The guilty plea .transcript also indicates that the trial court and both parties agreed to set the sentencing hearing for December 3, 2012.
The hearing was conducted on the date scheduled. As stated above, at the beginning of the hearing, the prosecutor announced that defense counsel had tendered an offer of a 30-year sentence. Thereafter, the defendant was given the opportu-' nity to present testimony and evidence |12during that hearing. The trial judge read a letter, which had been written by the defendant, into the record. When defense counsel informed the court that the defendant’s mother was present and desired to make a statement to the court, the trial judge stated, “That’s fíne, I will listen to anything either side wants me to hear.”
Subsequently, the defendant’s mother, Martha Franks, made a statement on her son’s behalf. Ms. Franks apologized for the defendant’s actions and stated .that he had “never been in trouble at all.” She also characterized the defendant’s actions as “a mistake.” The defendant also addressed the court. He apologized to Officer Walker, stating that he did not intend to shoot him. The defendant did not mention, nor did he object to, the recommended sentence of 30 years. We find that the defendant was not deprived of the right to a sentencing hearing. This assignment of error is without merit.
Pro Se Assignment of Error — Guilty plea and ineffective assistance claims
In his first four pro se assignments of error, the defendant challenges the validity of his guilty plea, seemingly intertwining the argument with claims of ineffective assistance of counsel. The defendant argues that his plea was not free and voluntary because his trial attorney’s performance was deficient, and he only agreed to plead guilty because his attorney made the following errors:
His attorney refused to develop the defenses of intoxication and justification; His attorney refused to file a motion to quash the bill of information as insufficient;
11sHis attorney refused to file a motion to suppress his confessions and inculpa-tory statements; and His attorney refused to file for a preliminary hearing or a motion to quash the charge of possession of marijuana with intent to distribute.
When the record establishes that an accused was informed of and waived his right to trial by jury, to confront his accusers and against self-incrimination, then the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. State v. Martin, 48,045 (La.App.2d Cir.5/15/13), 115 So.3d 750.
A violation of the Sixth Amendment right to effective assistance of counsel is determined by a two-prong test of whether an attorney’s performance was so deficient under prevailing standards that it preju *1094 diced the defendant to the extent that he was deprived of his constitutional right to due process. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). The defendant must show that the attorney’s actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney’s perspective at the time of the occurrence. Strickland, supra. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 828, writ denied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
The defendant must also prove the deficient performance caused him 114an actual prejudice so severe that, but for his counsel’s deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. The constitutional standard for effectiveness of counsel claims is the same in guilty plea cases as in cases which have gone to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); State v. Wry, supra. In Hill v. Lockhart, supra, the requirement of prejudice was interpreted to mean, in the guilty plea context, that but for counsel’s unprofessional or erroneous advice, the defendant would have pled not guilty and elected to go to trial. See, State v. Wry, supra.
In the- instant case, a review of the record reveals that the defendant’s guilty plea was voluntarily made. The transcript indicates that the trial court took great care to inform the defendant of the terms of the plea agreement and the constitutional rights that he was waiving by pleading guilty. The defendant indicated that he understood the nature of the charges against him and the subject penalties. He also informed the court that he was aware that the sentence was within the discretion of the trial court. Thereafter, the defendant affirmed that his guilty plea was his decision and was made without force or coercion.
Additionally, the defendant has not shown that his trial counsel’s performance was deficient for failing to pursue an intoxication or justification defense and failing to file motions to quash the bill of information and the confessions. A preliminary hearing was conducted, at |1swhich there was significant evidence (the controlled buy by the C.I., 6-8 pounds of marijuana, $10,000 in cash, a supply of drug distribution materials and scales) that supported the charge of possession of marijuana with intent to distribute.
In addition to failing to establish that his counsel’s performance was deficient, the defendant also fails to show that he was deprived of a fair trial because of his attorney’s performance. Additionally, he does not show that absent his attorney’s actions, he would not have entered a plea of guilty. The transcript reveals that the defendant attempted to negotiate his own plea agreement, by suggesting a charge of aggravated battery. The trial court advised the defendant that the state had not offered aggravated battery as an option. Moreover, the jury had been selected and was ready to be sworn and the defendant’s confessions/statements had- been deemed admissible. The defendant had been charged with two felony charges and was exposed to two sentences. When faced with his options, the defendant elected to accept the state’s plea offer, whereby he *1095 pled to one felony with the exposure to one prison sentence. These claims are without merit.
Pro Se Assignments of Error — Excessive Sentence
The defendant contends the 30-year sentence was excessive and disproportionate in light of the fact that he did not have the specific intent to kill the police officer. He also suggests that his attorney had informed him he would receive the minimum sentence of 20 years if he pled guilty.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with |1fiLSA-C.Cr.P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App.2d Cir.12/9/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
Second, a sentence violates La. Const. Art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore a sentence |17will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 551.-
With regard to the offense of first de-' gree murder, LSA-R.S. 14:30(C) provides that if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:27(D) provides, in pertinent part:
*1096 D. Whoever attempts to commit any crime shall be punished as follows:
[[Image here]]
(b) If the offense so attempted is punishable by death or life imprisonment and is attempted against an individual who is a peace officer engaged in the performance of his lawful duty, he shall be imprisoned at hard labor for not less than twenty nor more than fifty years without benefit of parole, probation, or suspension of sentence.
We first note that the record does not contain any evidence to support the defendant’s claim that his attorney had advised him that he would 11Rreceive the minimum sentence of 20 years. The transcript from the guilty plea colloquy indicates that the defendant’s counsel informed the defendant that the plea offer, with the sentence left to the discretion of the judge, was fair and he should accept it. Additionally, the trial court informed the defendant, multiple times, that the sentencing range was from 20 to 50 years, the sentence would be up to the trial court and the court would not make any promises as to what sentence would be imposed. Furthermore, the transcript from the sentencing hearing shows that the subsequent 30-year sentence was jointly recommended by the state and defense counsel, and it was the defense who suggested the 30-year sentence. The defendant did not object prior to the recommendation of the sentence or at any time during the sentencing hearing.
Moreover, the sentence imposed is within the statutory sentencing range. The sentencing transcript shows that the trial court took note of the defendant’s age, his lack of criminal history and his expression of remorse for his actions. However, the court also noted the serious nature of the crime, wherein the defendant shot a law enforcement officer, who, possibly, would have died from the injury had he not been wearing a bullet-proof vest. The court further stated, “[T]his type of case cries out for vigorous prosecution and it calls out and screams out for an appropriate sentence.”
Our review of this record reveals that this defendant was involved in significant drug trafficking, and he aimed and fired, through a window, at a police officer who was attempting to execute a search warrant. The defendant was initially charged with four felony offenses, and he received 119substantial benefit from the state’s agreement to dismiss the separate drug offense — possession of a Schedule I controlled dangerous substance (marijuana) with intent to distribute.[9] Accordingly, we find that the sentence imposed is not grossly disproportionate to the severity of the crime and does not shock the sense of justice. This assignment is without merit.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The other charges (possession of ecstasy and possession of a weapon) were nolle prossed prior to the guilty plea.

. In some portions of the record, Wilson's first name is spelled ‘‘Srderrick.”

. Demaryln Stewart and Monica Taylor were also arrested.

. As stated above, the state nolle prossed the charges for possession of ecstasy and illegal carrying of a weapon before the jury was empaneled.

. The testifying officers were Sgt. Paul Robinson (Shreveport Violent Crimes Unit), Officer Chris Bordelon (Shreveport Police Department Uniform Division), Agent Paul Hersey (Drug Enforcement Administration-Shreveport Office), and Agent John Kennedy (Shreveport Narcotics Task Force).

. Once more, the defendant admitted that he was in the room where marijuana was being distributed and he fired his weapon as the police officers entered the room. He explained that he had been drinking and laughing with the others as the drugs were being sold. He also stated that he was sitting by the window with his back to the door when he heard a "big old boom.” He believed that he and the others were being robbed, so he "jumped up and fired a shot.”

. State v. Osborne, 48,944 (La.App 2d Cir. 12/12/13) (unpublished).

. On October 25, 2013, while the application for post-conviction relief was pending in this court, the defendant filed a pro se pleading entitled, "Motion/Application for Reduction of Sentence and [an] 'Evaluating' Hearing Pursuant to C.Cr.P. art. 881.6.” He argued that since he had provided substantial assistance to the agents and officers during the investigation, then his sentence should be reduced in accordance with LSA-C.Cr.P. art. 881.6. The record reveals that the defendant was granted until November 15, 2013 to apply for supervisory writs; however, there is no indication that the trial court ruled on the motion to reduce sentence.

. For that offense alone, the defendant would have been exposed to a sentence of five to 30 years at hard labor and a fine of no more than $50,000. See LSA-R.S. 40:966, based on the statute's text in 2012, the year of the offense.